IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| WILLIAM M.,[1]<br><br>       Plaintiff,<br>  v.<br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br><br>       Defendant. | Case No.: 1:23-cv-01959-AN<br><br>OPINION AND ORDER |

      William M. ("Plaintiff") brings this action seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction over Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court reverses the Commissioner's decision and remands for further proceedings.

## BACKGROUND

### I.    Plaintiff's Application

      Plaintiff was born on May 27, 1968, making him 48 years old on his alleged onset date of January 1, 2017. Tr. 82. Plaintiff has a high school education and past relevant work as a police officer I. Tr. 29, 75. In his application, Plaintiff alleges disability due to "PTSD, hearing loss." Tr. 82.

      The Commissioner denied Plaintiff's applications initially and upon reconsideration. Tr. 90, 102. On August 15, 2023, Plaintiff appeared with counsel for a hearing

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

before Administrative Law Judge ("ALJ") Robert Frank Spaulding. Tr. 38-80. Prior to the hearing, Plaintiff amended his alleged onset date to December 19, 2019. Tr. 210. On October 5, 2023, the ALJ issued a written opinion, finding Plaintiff not disabled. Tr. 19-31. The Appeals Council denied review. Tr. 1-6. Plaintiff now seeks judicial review of the ALJ's final decision.

## II.     Sequential Disability Evaluation

The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step sequential procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the burden for steps one through four, and then the burden shifts to the Commissioner at step five. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

The five-step evaluation requires the ALJ to determine: (1) whether a claimant is "doing substantial gainful [work] activity"; (2) whether the claimant has a "medically determinable physical or mental impairment" or combination of impairments that is severe and either lasts at least a year or can be expected to result in death; (3) whether the severity of the claimant's impairments meets or equals one of the various impairments specifically listed by Commissioner; (4) whether the claimant's residual functional capacity ("RFC") allows the claimant to perform her past relevant work; and (5) whether, given the claimant's RFC, age, education, and work experience, the claimant can make an adjustment to other work that "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a), 416.920(a).

## III.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff met the insured status requirements

of the Act through December 31, 2025, and that Plaintiff had not engaged in substantial gainful activity since December 19, 2019, the amended alleged onset date. Tr. 21. At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: cervical degenerative disc disease, bilateral sensorineural hearing loss, PTSD, major depressive disorder, unspecified anxiety disorder. *Id.* At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals a listed impairment. Tr. 22. The ALJ then concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [He] can frequently climb ladders, ropes, and scaffolds. [He] must avoid concentrated exposure to noise (no exposure to loud noise). [He] is limited to occasional exposure to hazards such as unprotected heights and moving mechanical parts. [He] is limited to sustaining simple tasks, but not complex tasks (unable to carry out detailed and complex tasks). [He] is limited to sustaining concentration and pace to carry out simple, routine tasks for an 8-hour workday and 40-hour workweek. [He] is limited to occasional public and co-worker contact. [He] is limited to a routine work environment.

Tr. 24. At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a police officer I. Tr. 29, 75. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as Routing Clerk (DOT# 222.687-022), a light level occupation with an SVP of 2 and 138,000 jobs available; Marking Clerk (DOT# 209.587-034), a light level occupation with an SVP of 2 and 236,000 jobs available; and Collator Operator (DOT# 208.685-010), a light level occupation with an SVP of 2 and 41,000 jobs available. Tr. 30. Therefore, the ALJ concluded that Plaintiff is not disabled. Tr. 31.

## STANDARD OF REVIEW

The district court may set aside the Commissioner's denial of benefits only if the ALJ's findings are "'not supported by substantial evidence or is based in legal error.'" *Bray v.*

*Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The district court "cannot affirm the [ALJ's] decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record. *Id.* Where the record as a whole can support either the grant or denial of benefits, the district court "'may not substitute [its] judgment for the ALJ's.'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to find that Plaintiff was per se disabled as of May 27, 2023;[2] (2) failing to provide specific, clear and convincing reasons to reject his symptom testimony; (2) improperly rejecting the medical opinions of David Archambault, Ph.D., and Christopher Fadness, MSW; and (3) improperly rejecting the lay witness testimony of plaintiff's wife.

## I. Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th

---

[2] The Commissioner concedes this point and therefore we need not address Plaintiff's argument. Medical-Vocational Rule 202.06 directs a finding of disability for individuals of advanced age, unable to perform past relevant work, limited to light work, and with no transferable skills. As of May 27, 2023, Plaintiff fits this profile, and is therefore per se disabled. As such, this opinion addresses Plaintiff's disability status prior to May 27, 2023.

Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At his hearing, Plaintiff testified that he could not work on a regular, full-time basis because of his PTSD and anxiety. Tr. 64. He explained that he does not like having people near him, that he does not like to be touched, and that when he has heightened levels of anxiety, he gets confused. Tr. 64. He further explained that he has a hard time dealing with the public, he

does not trust people, has problems with officers, anger outbursts, and interfering thoughts. Tr. 65. He also suffers from hearing loss to the point where he cannot have a conversation when there is any type of background noise because it becomes too difficult to hear who is speaking. *Id*. He clarified that while he could hear well the day of the hearing, he still hears ringing in his hears. *Id*. Other than his PTSD, anxiety, and hearing loss, he also suffers from chronic neck pain, headaches, and migraines. Tr. 66. While his migraine medication works, it "knocks [him] out." *Id*. The combination of symptoms has led to depression and nausea. *Id*. Plaintiff also noted that he is obsessively hypervigilant, constantly on edge that "something bad's about to happen." Tr. 68. Due to the obsessive hypervigilance, his wife has to remind him to shower and change clothes, otherwise he will not do so for days at a time. *Id*.

When asked about his anger issues, Plaintiff testified that he had an altercation with a member of his former church because his work was being criticized and the man got too close, too quickly, and it would have escalated into a physical fight if Plaintiff had not gotten into his vehicle and left the scene. Tr. 69-70. Following the altercation, he never returned to the church. Tr. 70. Plaintiff had another incident when his neighbor was setting off fireworks, causing him to grab his rifle and enter a state of hypervigilance. Tr. 70, 1195. He remained in a highly agitated state for at least three days afterwards. Tr. 70. Plaintiff further testified that he rarely has face to face contact with anyone outside of his wife. Tr. 71.

The ALJ determined that the Plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 25. The ALJ discounted Plaintiff's subjective symptom testimony as being

inconsistent with his medical records because: (1) his level of activity was inconsistent with his allegations; and (2) he was improving with treatment.

### 1. Daily Activities

An ALJ may rely on daily living activities as a basis for discounting subjective symptoms if the claimant's activities contradict his testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is enough that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not, however, need to be utterly incapacitated to receive disability benefits, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)). Further, the "ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

The ALJ discounted Plaintiff's subjective symptom testimony because he is able "to do housework, cook, go shopping, manage his own finances, drive, and be independent in all activities of daily living." Tr. 25. Plaintiff also cares for his pets, mows the lawn, does the dishes and other basic cleaning, does the laundry, drives, travels outside the home alone, and shops in stores. *Id*. Given that a majority of Plaintiff's testimony dealt with his mental health, such as symptoms related to PTSD and increased anxiety when outside the home, the ALJ did not explain how Plaintiff's ability to perform these daily activities undermines said testimony. Being able to grocery shop for 20 minutes to an hour, or attend church services once a week does not,

without more, contradict Plaintiff's testimony. *See* Tr. 319-20. After all, plaintiffs cannot be penalized for trying to live some semblance of a normal life. Neither did the ALJ find that Plaintiff spent a "substantial" portion of his day engaged in household chores or that these activities are transferrable to a work environment. *Ghanim v. Colmin*, 763 F.3d 1154, at 1165. Furthermore, the mere fact that Plaintiff is capable of using a computer, paying bills, counting change, and using a checkbook does not contradict Plaintiff's testimony regarding his ability to concentrate.

Because the ALJ did not adequately connect these activities to any symptom or the degree of any symptom alleged by Plaintiff, this fails to provide a specific, clear and convincing basis upon which to discount plaintiff's subjective symptom testimony. *See Felicia F. P. v. Comm'r Soc. Sec. Admin.*, Case No. 3:21-cv-00889-AR, 2023 WL 1991530, at *3 (D. Or. Feb. 14, 2023).

**2. Treatment**

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Here, the ALJ relied on reports of the Plaintiff's mental health symptoms improving with treatment, noting that in September 2020, Plaintiff denied depression and anxiety, that in February 2021 he appeared open and engaged, demonstrated insight, and appeared motivated towards wellness, and that in May 2021 he reported enjoying riding his motorcycle. Tr. 379, 1213, 1216, 1219, 1210. In June, Plaintiff was negative for depression but

was started on Temezepam for anxiety, which reportedly helped with sleep. Tr. 356, 359, 1208. In September, Plaintiff was moved from bi-weekly visits to monthly as needed sessions due to increased self-awareness, education in PTSD, and coping skills. Tr. 1204. In October, Plaintiff was able to render comfort to his spouse when she was experiencing anxiety. Tr. 1202. In February 2022, Plaintiff was self-medicating with alcohol in the mornings, afternoons, and evenings with approximately five to six drinks per day, though he reported doing well in March, and described overcoming a difficult situation. Tr. 1013, 1074, 1196. In July, Plaintiff reported doing well, going out to dinner and avoiding having an outburst when he overheard someone making a negative comment about police, and had friends over for a Fourth of July celebration. Tr. 1040, 1193. In November, Plaintiff went hunting several times and had a friendly talk with his old police chief. Tr. 2416. In March 2023, Plaintiff reported drinking "about 1/5th of whiskey daily" since Christmas as a coping mechanism, but that he was "doing great not drinking" the following month. Tr. 2413.

   Plaintiff argues that his improvement through therapy was not a legitimate basis upon which to discount his testimony because the ALJ relied on one-off events like the dinner out with his wife, that it took a lot of courage to have dinner, that he viewed it as a risky event, and the full chart notes do not support the ALJ's conclusion. Pl.'s Opening Br. 9, ECF 10. He further argues that a second chart note, regarding hunting and a friendly talk with his old police chief, does not provide support because Plaintiff continued to be hypervigilant. Pl.'s Opening Br. 10, ECF 10. This Court disagrees.

   First, Plaintiff provides no evidence to support his contention that the full chart notes do not provide support for the ALJ's conclusions. Second, the full chart notes from the events in question do not support Plaintiff's assertion. For example, the full notes from the

dinner reiterate that the dinner out was a successful event and Plaintiff's ability to control himself was nothing short of a success. Tr. 1193. Likewise, the notes from his hunting trip and get together with his police chief does state that he remains hypervigilant amongst the public, but the fact that plaintiff still suffers to some degree does not negate improvement. Tr. 2416. However, the Court finds that such improvement "must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison*, 759 F.3d at 1017. Despite Plaintiff's reported improvements, his aggressive reaction to criticism and physical closeness of another church member, his hypervigilant reaction to his neighbor's fireworks, his self-medication with alcohol, and his limited ability to be in public spaces for any length of time resulting in increased levels of anxiety, hypervigilance, and isolationism, does not lead this Court to believe that his improvement would lead to effective functioning in the workplace. *See* Tr. 863, 1013, 1074, 1171, 1195-96, 1215, 1223, 1225, 2413, 2416.

Given the above, the ALJ's finding that Plaintiff's mental health impairments improved with treatment is not supported by substantial evidence.

## II.     Medical Opinions

Plaintiff alleges that the ALJ failed to properly discount the medical opinions of David Archambault, Ph.D., and Christopher Fadness, MSW. Pl.'s Opening Br. 12, ECF 10. Specifically, he argues that the ALJ failed to adequately evaluate the medical opinions for supportability and consistency, and that Plaintiff's reported activities were not a valid reason to discount the medical opinions. Pl.'s Opening Br. 16-17, ECF 10.

### A.     Legal standards

For disability claims filed on or after March 27, 2017, new regulations for

evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider

whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). *Id.*

### B.     David Archambault, Ph.D.

Plaintiff argues that the ALJ improperly discredited Dr. Archambault's opinion regarding all of his assessed functional limitations. The ALJ found that Dr. Archambault's opinion was unpersuasive because it was inconsistent with and unsupported by the medical evidence, and because his reported activities refute the assessed limitations. Tr. 28-29.

Dr. Archambault provided a medical opinion based on a consultative examination on January 24, 2022. Tr. 856. In the report, Dr. Archambault noted that while Plaintiff would not have difficulty performing simple and repetitive tasks or detailed and complex tasks and would not have difficulty accepting instructions from a supervisor, Plaintiff would have difficulty interacting with coworkers and the public because he is paranoid, hypervigilant, isolates, and is prone to angry outbursts while being chronically irritable. Tr. 862-63. Dr. Archambault also noted Plaintiff would have difficulty performing work activities on a consistent basis without special or additional instructions because he has issues with concentration and memory because he has difficulty organizing his thoughts and staying on task. Tr. 863. Lastly, Dr. Archambault found Plaintiff would have difficulty maintaining regular attendance, completing a normal workweek, and dealing with the usual stress encountered in the workplace due to his PTSD. *Id*.

The ALJ discounted Dr. Archambault's medical opinion because it was inconsistent with the cited medical evidence, it did not contain explanations for the findings, and Plaintiff's reported activities refuted the assessed limitations. Tr. 27-28. This Court disagrees.

First, the ALJ does not provide any explanation for why Dr. Archambault's opinion is inconsistent with the cited medical evidence. Dr. Archambault stated his opinion was based on a one-time examination of Plaintiff and also a review of treatment records from 2020-21, a return-to-work questionnaire dated September 12, 2021, and his function report. Tr. 856. The ALJ provides no reasoning as to why the medical records reviewed by Dr. Archambault do not provide support for his findings. Because the ALJ does not provide an explanation, the ALJ's reasoning is unsupported by substantial evidence, and constitutes error.

Second, while an ALJ may reject a medical opinion for lack of explanation when in a check box form, that is not the case here. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion."); *see also Orn V. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. § 404.1527(c)(3). In fact, Dr. Archambault specifically referred to Plaintiff's symptoms of PTSD and depression, such as angry outbursts, hypervigilance, poor motivation, and paranoia. Tr. 856, 862-63. Thus, the ALJ could not reject Dr. Archambault's opinion due to lack of explanation.

Third, the ALJ rejected Dr. Archambault's opinion because of Plaintiff's reported activities. As discussed earlier in this opinion, Plaintiff's ability to perform activities such as drive, do housework, cook, shop, manage his own finances, and attend to his hygiene do not form a sufficient basis for discounting a medical opinion regarding Plaintiff's mental health without sufficient reasoning. Notably, the ALJ failed to explain how these activities are inconsistent with the limitations described by Dr. Archambault. The ALJ also notes that Plaintiff has normal insight and judgment, no delusional thoughts or perceptual disturbances, yet Plaintiff has no complaints or treatment notes that would suggest those would not be normal.

Furthermore, normal eye contact, pleasantness, normal mood and affect, and cooperative behavior in a medical setting does not establish that Plaintiff would act the same in a workplace setting without further explanation. *See Ghanim*, 763 F.3d at 1164 (rejecting ALJ's reliance on the claimant's "good eye contact, organized and logical thought content, and focused attention" because "[t]hese observations of cognitive functioning during therapy sessions [did] not contradict [the claimant's] reported symptoms of depression and social anxiety").

Fourth, the ALJ rejected Dr. Archambault's findings related to off-task behavior because there was no evidence of loose associations, tangentiality, circumstantiality, or confusion, and, during testing, Plaintiff was able to complete serial sevens, spell the word "world" backwards, executed a four-step sequential command without difficulty, and had no issues with his memory or judgment and insight. Tr. 28, 861-62. Dr. Archambault's finding that Plaintiff would have difficulty performing work activities on a consistent basis without special or additional instructions is inconsistent with the testing, showing no difficulties in this regard. Notably, while Dr. Archambault states Plaintiff may need monitoring and prompting, none was required during testing.

Given the above, the ALJ's rejection of Dr. Archambault's medical opinion as it pertains to Plaintiff's off-task behavior is supported by substantial evidence. However, the ALJ's findings with regard to the rest of Dr. Archambault's medical opinion are unsupported by substantial evidence.

    **C.**    **Christopher Fadness, MSW**

Plaintiff argues that the ALJ improperly discredited Fadness's opinion regarding all of his assessed functional limitations. The ALJ found that Fadness's opinion was unpersuasive because it was inconsistent with and unsupported by the medical evidence, and

because his reported activities refute the assessed limitations.

Fadness provided a medical opinion on October 5, 2022. Tr. 1228. Fadness reported that he had been treating Plaintiff with talk therapy with a focus on cognitive behavior once a month since February 2021. Tr. 1222. He noted that Plaintiff has chronic anxiety, difficulty relating to others, isolation, anger, depression, substance abuse, difficulty sleeping, intrusive thoughts, and a history of suicidal ideation and self-harming behaviors. Tr. 1223. He opined that Plaintiff's severe PTSD meant he was chronically ill, fatigued, anxious and intolerant, which would lead to chronic disruption in the workplace. *Id*. Fadness noted that Plaintiff would have extreme limitations in his ability to interact appropriately with the public, supervisors and coworkers, and in his ability to respond appropriately to usual work stress. Tr. 1225. He also found that Plaintiff would have mild difficulties understanding, remembering, and carrying out simple instructions, moderate difficulty making judgments on simple work-related decisions, marked difficulty understanding, remembering, and carrying out complex instructions, and extreme difficulty making judgments on complex work-related decisions. *Id*. Fadness explained that PTSD, panic attacks, a positive traumatic brain injury screen, poor sleep, and chronic fatigue contributed to his findings. Tr. 1225-26. Lastly, Fadness believed Plaintiff would be off-task 15% or more of a normal workday and would miss more than four days per month of work due to his anxiety, depression, fatigue, and preoccupation with coping skills. Tr. 1227-28.

The ALJ rejected Fadness's medical opinion because it was inconsistent with the cited medical evidence, it did not contain explanations for the findings, and Plaintiff's reported activities refuted the assessed limitations, the same reasons as Dr. Archambault's above. Tr. 27-28. Given that the ALJ used the same reasoning in rejecting Fadness's opinion as was used to discredit Dr. Archambault's opinion, the Court finds the ALJ's reasoning equally inadequate to

discount Fadness's opinion and need not rehash said reasoning. As such, the ALJ's rejection of Fadness's medical opinion as it pertains to Plaintiff's off-task behavior is supported by substantial evidence. However, the ALJ's findings with regard to the rest of Dr. Archambault's medical opinion are unsupported by substantial evidence.

**III.    Lay Witness Testimony**

Plaintiff contends that the ALJ erred by failing to properly address the lay witness testimony provided by Plaintiff's spouse, former spouse, and former supervisor by failing to provide reasons germane to the witness. Pl.'s Opening Br. 17, ECF 10.

Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id*. (citation and internal quotation omitted). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See id*. at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

In the third-party reports, Plaintiff's spouse stated that Plaintiff intensely fixates on random things, repeatedly goes on passionate rants and speeches, and is highly irritable to the point that Plaintiff's spouse feels as though she "live[s] in a house of land mines." Tr. 223. Plaintiff's spouse also reports that he gets frustrated when asked to do more than one thing at a time, that he often asks the same question two or three times within a few minutes, that he is hypervigilant and on guard such that he is constantly performing "threat assessments," regularly

experiences panic attacks, and is suspicious and paranoid. Tr. 224-27. Plaintiff's former spouse and former boss described much the same, including irritability, angry outbursts, aggressive behavior, memory issues, hypervigilance, and extreme personality changes. Tr. 228-29, 339.

The ALJ briefly mentions the lay witness testimony but does not explain how, or even if, they were considered. Tr. 25. Since the Commissioner does not expressly respond to Plaintiff's argument, the Commissioner therefore concedes the issue. *See United States v. McEnry*, 659 F.3d 893, 902 (9th Cir. 2011) (concluding the government waived an argument by failing to raise it in its answering brief). Accordingly, the ALJ erred.

### IV. Remedy

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under that analysis, the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Plaintiff argues that a remand for immediate payment of benefits is the proper

course here because the ALJ improperly rejected Plaintiff's subjective symptom testimony and improperly discounted the medical opinions of Christopher Fadness and Dr. Archambault. Here, the first requisite of the *Garrison* test is met. As discussed above, the ALJ improperly rejected Plaintiff's subjective symptom testimony, improperly rejected the medical opinions of Christopher Fadness and Dr. Archambault, and improperly rejected the lay witness testimony.

Furthermore, the record is fully developed and further proceedings would serve no useful purpose. The Commissioner's arguments that "serious doubt" exists due to Plaintiff's reported activities of daily living and improvement with treatment were addressed, and rejected, above. Likewise, normal concentration findings on testing, normal eye contact, normal behavior and cooperativeness, and the ALJ's analysis regarding the medical opinions were also considered and rejected as lacking support from substantial evidence.

Lastly, if the improperly discredited evidence explained above is credited as true, the ALJ would be required to find Plaintiff disabled on remand. Since the record as a whole does not create serious doubt as to whether Plaintiff is, in fact, disabled, this case must be remanded for immediate award of benefits.

## CONCLUSION

For the reasons set forth in this opinion, the Commissioner's decision is REVERSED and REMANDED for immediate award of benefits.

IT IS SO ORDERED.

DATED this 19th day of February, 2025.

Adrienne Nelson
United States District Judge